No. 2012 - 1558

*IN THE*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

SEIRUS INNOVATIVE ACCESSORIES, INC.

*Plaintiff- Appellant,*

*v.*

BALBOA MANUFACTURING COMPANY, LLC,
*and* SPORTS ACCESSORIES AMERICA, INC.,

*Defendants-Appellees*

APPEAL FROM THE THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA,
CASE NO. 09-CV-2274, HONORABLE MARILYN L. HUFF DISTRICT JUDGE

## RESPONSE BRIEF OF DEFENDANTS-APPELLEES
## BALBOA MANUFACTURING COMPANY, LLC,
## *and* SPORTS ACCESSORIES AMERICA, INC.,

Steele N. Gillaspey
GILLASPEY & GILLASPEY
The NBC Tower
225 Broadway, Suite 2220
San Diego, California 92101
619 234 37600
*sng@g-glaw.com*
*Attorneys for Defendants-Appellees*

July 14, 2014

# UNITED STATES COURT OF APPEALS

## FOR THE FEDERAL CIRCUIT

Seirus Innovative Accessories v. Balboa Manufacturing

No. 2012-1558

## CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees certifies the following:

1.    The full name of every party represented by us is:

      [a]    Balboa Manufacturing Company, LLC

      [b]    Sports Accessories America, Inc.

2.    The name of the real parties in interest represented by us are:

      [a]    Balboa Manufacturing Company, LLC

      [b]    Sports Accessories America, Inc.

3.    All parent corporations and any public companies that own 10 percent or more of the stock of the parties represented by us are:  None

4.    The names of all law firms and the partners or associates that appeared for the parties now represented by us in the trial court or are expected to appear before this Honorable Court are:  Steele N. Gillaspey, Gillaspey & Gillaspey

DATED:    July 14, 2014

*/s/ Steele N. Gillaspey*
_____
(Signature of Counsel)

Steele N. Gillaspey
_____
(Printed Name of Counsel)

Please Note:  All Questions must be answered

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF RELATED CASES ...................................................... 1

STATEMENT OF THE ISSUES ................................................... 1

STATEMENT OF THE PROCEEDINGS BELOW ............................ 3

BALBOA ARGUMENT .................................................................. 7

      Summary of Argument ...................................... 7

I.   DISTRICT COURT DID NOT ERR IN DENYING ........................... 11
RULE 56. COURT PROPERLY FOUND THAT
SEIRUS HAD HAD AMPLE OPPORTUNITY TO
CONDUCT DISCOVERY IN PRIOR CASES AND
IN THE BALBOA CASE

      Standard of Review ............................................. 11

      Rule 56 and Prior Cases Going ........................... 12
Back to 2003 - Opportunity

      Rule 56 as to Trade Dress - USPTO ..................... 12
Actions in 1999 - Opportunity

      Evidence within Seirus' Possession ...................... 13
and/or Control - 56 Properly Denied

      Seirus Cannot Argue in a Vacuum ....................... 14

      As to the '804 Patent ........................................... 17

      As to the '690 Patent .................................................. 18

The Scheduling Order - ....................................... 18
Summary Judgement At Any Time

Denial of Stay of Case was Proper ......................... 22

II.   DISTRICT COURT DID NOT ERR IN RULING .......................... 22
THE UNREGISTERED TRADE DRESS INVALID
AS TO BOTH PRODUCT AND PACKAGING –
JUDGMENT IS PROPERLY AFFIRMED.

Function ......................................................... 24

Utility Patents Underscore Function ........................

Advertising and Function ...........................................

Lack of Secondary Meaning ......................................

Copying Assertion Insufficient ................................

Simple Manufacture/Alternatives ............................

The New Trade Dress Claim In ...............................
Opposition to Summary Judgment

Comparison of the "Old" and ..................................
the "New" Trade Dress

Color "Black" Claim Insufficient ............................

No Likelihood of Confusion ...................................
Because No Trade Dress

Asserted Unregistered Package ...............................
Trade Dress Similarly Fails

Summary Judgment as to Trade Dress .....................
was Properly Granted

III.  DISTRICT COURT DID NOT ERR IN RULING ...............................
      THAT THE SEIRUS HEAD WEAR AND GOGGLE
      '690 PATENT WAS NOT INFRINGED BY BALBOA –
      SUMMARY JUDGMENT IS PROPERLY AFFIRMED

           Standard of Review ....................................................

           Agreed Construction ..................................................

           Standard for Infringement ..........................................

           File Wrapper Estoppel ..............................................

           Seirus Fails to Meet ................................................
           Its Burden of Proof

IV.  DISTRICT COURT DID NOT ERR IN RULING ...............................
     THAT THE SEIRUS HEAD WEAR '804 PATENT
     WAS OBVIOUS IN LIGHT OF CITED PRIOR ART
     - SUMMARY JUDGMENT PROPERLY AFFIRMED

           The Court Actually First Did the Analysis ...........

           Collateral Estoppel Stated As An ...........................
           ALTERNATIVE BASIS - Nothing More

           Vacatur Has No Effect .............................................

Judicial Notice Was Quite Proper .........................

Level of Skill ..............................................................

V.   CONCLUSION ...............................................................................................

# TABLE OF AUTHORITIES

*In Re: American Nat'l Can Co.* ............................................................ 28
41 USPQ2d 1841 (TTAB 1997)

*Anderson v Liberty Lobby, Inc.* ......................................................... 18, 19, 31, 44
477 US 242, 250 n. 5 (1986)

*Art Attacks Ink, LLC v. MGA Entm't Inc.* ......................................... 24
581 F.3d 1138, 1145 (9th Cir. 2009)

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.* .................................. 47
73 F.3d 1573, 1581 (Fed.Cir.1996)

*Barfield v. Brierton* ......................................................................... 11, 22
883 F.2d 923, 932 (11th Cir. 1989)

*Baron Services Inc., v. Media Weather Innovations LLC.* ................. 20, 21
717 F.3d 907 (Fed. Cir. 2013)

*Bates v. Union Oil Co. of California* ................................................. 54
944 F.2d 647, 650, 652 fn. 1 (9th Cir. 1991)

*Berman v. Dept. of Interior* .............................................................. 22
447 Fed.Appx 186, 190 (Fed. Cir. 2011)

*Broadcom Corp v. Qualcomm, Inc.* .................................................. 48
543 F.3d 683, 697-698 (Fed. Cir. 2008)

*Burlington N. Santa Fe R.R. v. Assiniboine*
*& Sioux Tribes of the Fort Peck Reservation* .................................... 21
323 F.3d 767, 773 (9th Cir. 2003.)

*In Re: Caterpillar, Inc.* .................................................................... 28
43 USPQ2d (TTAB 1997)

*Celotex Corp v. Catrett* ................................................................... 18, 44
477 US 317, 322-23 (1986)

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.* .... 40
696 F.3d 206, 218 (2nd Cir. 2012)

*Clamp Mfg Co v. Enco Mfg Co.* ........................................................ 32, 33
870 F.2d 512, 517 (9th Cir 1989)

*Clicks Billiards Inc. v. Sixshooters Inc.* ................................................................ 31, 41, 42
251 F.3d 1252, 1262 (9th Cir. 2001)

*Collins v. D.R. Horton, Inc.* ................................................................................. 53
505 F.3d 874, 883, (9th Cir. 2007)

*Continental Laboratory Products, Inc v. Medex, Int'l, Inc.* ............................... 31, 33, 42
114 F.Supp. at 1000

*In Re: Controls Corp of America* ........................................................................ 28
46 USPQ2d 1308 (TTAB 1998)

*Cybor Corp., v. Fast Techs., Inc.* ........................................................................ 45
138 F.3d 1448, 1455-56 (Fed. Cir. 1998)

*Disc Golf Ass'n v. Championship Disc., Inc.* ...................................................... 24, 29, 31
158 F.3d 1002, 1006 (9th Cir. 1998)

*In Re: Edward Ski Products, Inc.* ........................................................................ 13
49 USPQ2d 2001 (TTAB 1999)

*Express, LLC v. Forever 21*, Inc. ........................................................................ 32
2010 WL 3489308 (C.D.Cal. Sep. 2, 2010)

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.* ...................................... 49
535 U.S. 722, 733 (2001)

*First Brands Corp. v. Fred Meyer, Inc.* ............................................................... 31
809 F.2d 1378, 1383 (9th Cir. 1987)

*Fuddruckers, Inc v. Doc's B.R. Others, Inc.* ....................................................... 35, 41
826 F.2d 837, 844-45 (9th Cir 1987)

*Genentech, Inc. v. Amgen, Inc.* ........................................................................... 11
289 F.3d 761, 768, 62 U.S.P.Q.2d 1640, 1644 (Fed. Cir. 2002)

*General Electric Co. v. Wabash Appliance Corp.* ............................................... 47
304 US. 364, 369, 58 S.Ct. 889, 902, 82 L.Ed 1402 (1938)

*Hoganas AB v. Dresser Indus., Inc.* .................................................................... 28
9 F.3d 948, 954 n. 27 (Fed. Cir. 1993)

*In Re: Honeywell, Inc.* ........................................................................................ 28
8 USPQ2d 1600 (TTAB 1988)

*Honeywell Int'l Inc. v. Hamilton Sundstrand* ....................................................... 45
370 F.3d 1131, 1139 (Fed. Cir. 2004)

*Innovention Toys, LLC v. MGA Entertainment, Inc.* ............................................ 55
637 F.3d 1314,1323 (Fed. Cir. 2011)

*Johnson v. Mammoth Recreations Inc.* ................................................................ 19
975 F.2d 604, 610 (9th Cir. 1992)

*Kahn v. General Motors Corp.* ............................................................................. 46
135 F.3d 1472, 1476 (Fed. Cir. 1998)

*Levi Strauss & Co v. Blue Bell, Inc.* ..................................................................... 32
778 F.2d 1352, 1354 (9th Cir 1985)

*Matsushita Electrical Indus. Co v. Zenith Radio Corp.* ........................................ 45
475 US 574, 586 (1986)

*Metropolitan Life Ins. v. Bancorp Services, LLC.* ............................................... 21
527 F.3d 1330, 1338 (Fed. Cir. 2008)

*In Re: Morton-Norwich Products, Inc.* ................................................................. 28
671 F.2d 1332, 213 USPQ 9 (CCPA 1982)

*Pacific Coast Marine Windshields v. Malibu Boats* ............................................. 45
739 F.3d 694, 700 (Fed. Cir. 2014)

*In Re: Pingel Enterprises, Inc.* ............................................................................. 35
46 USPQ2d 1811 (TTAB 1998)

*Qualitex v. Jacobson Products Co.* ...................................................................... 40
514 US 159, 166 (1995)

*Rachel v. Banana Republic, Inc.* .......................................................................... 25
831 F.2d 1503, 1506 (9th Cir. 1987)

*Rice v. Dep't of the Treasury* ............................................................................... 53
998 F.2d 997, 999 (Fed. Cir. 1993)

*In Re: Semel* ......................................................................................................... 35
189 USPQ 285 (TTAB 1975)

*SSIH Equipment S.A. v. United States Intern. Trade Com'n.* ............................. 53
718 F.2d 365, 370 (Fed.Cir.1983)

*Thomas & Betts Corp v. Panduit Corp.* ............................................................ 35
65 F.3d 654, 36 USPQ2D 1065 (7th Cir. 1995)

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.* ................................................... 25
532 US 23, 33 (2001)

*Tripati v. Henman* ............................................................................................ 53
857 F.2d 1366, 1367 (9th Cir. 1988)

*Two Pesos, Inc v. Taco Cabana, Inc.* ............................................................... 31
505 US 763, 768 (1992)

*Voda v. Cordis Corp.* ....................................................................................... 49
536 F.3d 1311, 1324-25 (Fed.Cir.2008.)

*Wal-Mart Stores, Inc v Samora Bros, Inc.* ..................................................... 31, 32
529 US 205, 216 (2000)

*Walker & Zanger, Inc v. Paragon Industries, Inc.* ........................................... 33
549 F.Supp2d 1168 (ND Cal 2007)

*Warner-Jenkinson Co v. Hilton Davis Chemical Co.* ........................................ 47
520 US 17, 21 (1997)

*In Re: Weber-Stephen Products Co.* .................................................................. 28
3 USPQ2d 1659 (TTAB 1987)

*Yankee Candle Co v. Bridgewater Candle Co.* .................................................. 32, 33
259 F.3d 25, 43 (1st Cir. 2001)

15 USC § 1125 .................................................................................................... 24

15 USC § 1127 .................................................................................................... 40

35 USC § 112 ...................................................................................................... 47

FED.R.CIV.P., Rule 4 .......................................................................................... 3

FED.R.CIV.P., Rule 8 .......................................................................................... 22

FED.R.CIV.P., Rule 56 ........................................................................................ 1, 6, 32, 56

FED.R.CIV.P., Rule 201 ...................................................................................... 9, 10, 54

Fed.R.Evid. 201 .................................................................................................. 9, 28

Lanham Act ........................................................................ 4, 35

*McCarthy* on Trademarks.................................................. 29

*Intellectual Property: Patents, Trademarks, and Copyright; in a nutshell 5th Edition*.... 47,48
Arthur R. Miller and Michael H. Davis (2012) § 8.2.

## STATEMENT OF JURISDICTION

Balboa Manufacturing Company, LLC and Sports Accessories America, Inc. (jointly "Balboa") concur in the Seirus Innovative Accessories, Inc. ("Seirus") Statement of Jurisdiction as set forth in the Opening Brief.

## STATEMENT OF RELATED CASES

At the time this Appeal was filed in July 2012, there were two [2] other cases comprising four [4] defendants total [two in each case]: [1] *Seirus v Cabela's, et al*, 09-cv-00102 (SD Cal); and [2] *Seirus v Gordini*, et al 10-cv-00892 (SD Cal).

In each case, the Honorable Trial Court had granted Summary Judgment in favor of the respective Defendants - Invalidity of the '804 Patent (obviousness); Non-infringement of the '690 Patent, and no trade dress as to product or packaging.  Serius later settled with Cabela's and Gordini.

## STATEMENT OF THE ISSUES

Appellant Seirus asserts that the Honorable Trial Court erred in each of its decisions in this case.  Balboa respectfully disagrees.  The issues presented are:

1.      Whether the District Court properly denied Seirus' request for Rule 56[d] relief where Seirus had been litigating the claims in dispute for many years, and had had extensive opportunity to gather the requisite discovery/evidence for its claims - claims upon which Seirus bore the burdens of proof.

2.     Whether the District Court properly granted summary judgment as to Seirus' asserted trade dress claims where, inter alia, Seirus [1] repeatedly failed to provide evidence of non-functionality of its asserted trade dress, and where Seirus [2] repeatedly failed to provide cognizable evidence of secondary meaning as to its asserted product or packaging trade dress, and where Seirus had the opportunity to provide such proof before the Courts, and before the US Patent & Trademark Office (inclusive of the TTAB) - each of whom found function,  lack of acquired distinction/secondary meaning, and a failure of proof by Seirus as to its asserted trade dress.

3.     Whether the District Court properly granted summary judgment of non-infringement as to Seirus' 6,272,690 patent ("the '690 Patent") where Seirus agreed to adopt the Bula Court's claim construction, which in turn was adopted by Seirus in the *Cabela's* claim construction, which in turn was adopted by Seirus in the Balboa claim construction - all agreed constructions clearly stating that the '690 Patent requires headwear to be sold in combination with a pair of goggles - and further, whether Seirus is bound by the prosecution history of the '690 Patent which unequivocally provided the limitation that goggles be provided in combination with an article of clothing, and where Balboa has never manufactured or sold goggles in combination with an article of clothing.

///

4.     Whether the District Court properly granted summary judgment on grounds of invalidity as to Seirus' 5,214,804 patent ("the '804 Patent") where the District Court determined the patent was obvious based upon the law and in light of the history showing no less than eleven (11) prior art references - six of which were not before the patent examiner at the time of its prosecution; and whether the Trial Court's application of collateral estoppel as an alternative basis to make its decision was proper.

## STATEMENT OF THE PROCEEDINGS BELOW

Seirus filed its original Complaint on October 14, 2009 for patent infringement, common law trade dress infringement[1], and unfair competition against Balboa Manufacturing Company, LLC.

Seirus held the Complaint and did not serve the Complaint for four months, in violation of *FED.R.CIV.P.*, Rule 4[m].  Again, a delay of some four months.

On the eve of the expiration of the Rule 4[m] time period, Seirus filed an amended complaint for patent infringement, trade dress infringement, and unfair competition on February 10, 2010 against Balboa Manufacturing Company, LLC and Sports Accessories America, Inc. (Serius *First Amended Complaint*) (A131-144)

---

[1] In 1999, Seirus -who had been seeking trade dress registration at the USPTO - had the claims finally rejected on functionality and other foundations, which rejection was affirmed at the appellate level before the TTAB.

In its Complaint, Seirus alleged infringement and inducement of infringement of the 5,214,804 patent filed on January 27, 1992 and issued on June 1, 1993 ("the '804 Patent") and the 6,272,690 patent filed on March 18, 1996 and issued on August 14, 2001 ("the '690 Patent") by the Defendants' accused products. (Complaint at 4-10.) The '804 claims are directed to an article of clothing that includes a mask portion to be worn about a user's mouth and nose, and a scarf portion to be worn about a user's neck. (Doc. No. 85, Ex. 3, the '804 patent). The '690 patent contained a single claim directed to a "combination of a sport goggle and an article of protective clothing." (Doc. No. 78, Ex. 1, the '690 patent).

Seirus also asserted claims of common law trade dress infringement, false designation of origin and unfair competition under the Lanham Act, and unfair competition and unjust enrichment under California law. (Seirus *FAC* at 4-10)(A131-144). Seirus lost these claims on Summary Judgment and does not appeal the Trial Court's decision regarding those claims.

At the same time, Seirus had filed complaints grounded in the '804 Patent, the '690 Patent and the asserted common law trade dresses against other defendants, including but not limited to, Bula America, Cabela's, Ross Glove, Gordini, Kombi, Turtle Fur and Da Kine Hawai'i. Seirus did not identify those related cases, nor prior related case to the Court when it filed the Balboa case. On filing of the Balboa Notice of Related Cases, the Court transferred the active cases. (A5693-5696).

Some two years after the original Seirus filing in *Balboa*, and almost three years after the filing of the Complaint in *Cabela's*, in August, 2011, Cabela's and Ross Glove commenced filing a series of Partial Summary Judgment Motions - as to the Seirus asserted Trade Dresses; as to the '804 Patent (invalidity/obviousness), and as to the '690 Patent (non-infringement). Upon briefing and hearing, the Trial Court in *Cabela's* commenced granting the partial summary judgment motions in October 2011 - October 3, 2011, grant of partial summary judgment on the issue of the Seirus' asserted trade dresses (product and packaging) on grounds of invalidity due to, amongst other findings/determinations, the Court's determination of function[2] and determination of a lack of secondary meaning (failure to produce substantive evidence). (*Seirus v Cabela's*, Dkt 350)(A5072-5090). October 25, 2011, grant of partial summary judgment on grounds of non-infringement as to the '690 Patent (confirming that the balaclava and goggle were required to be sold together/in combination). (*Seirus v Cabela's*, Dkt 440)(A5656-5677). November 1, 2011, grant of Partial Summary Judgment on grounds of invalidity as to the '804 Patent, finding said patent obvious. (*Seirus v Cabela's*, Dkt. 446) (A5684-5690). Trial in *Cabela's* was scheduled for November 2011.

---

[2] Similar to the findings of the USPTO/TTAB in denying registration.

On December 29, 2011, Balboa filed for Summary Judgment/Adjudication, inclusive of the '804 Patent (invalidity/obviousness), the '690 Patent (non-infringement), and Seirus' asserted common law trade dress claims. Balboa also joined with the Gordini/Kombi Summary Judgement/Adjudication in Case Nos. 10-cv-0892.

On January 16, 2012, Seirus filed its Opposition to Summary Judgment, inclusive of filing a Motion for Rule 56[d] relief. Seirus also, for the first time, disclosed a claimed new and improved common law trade dress - different from the trade dress pled in the complaint, and described in discovery. No amendment to any complaint was sought.

On January 23, 2012, Balboa filed its Reply as to the Summary Judgment, and its Opposition to the Seirus Rule 56[d] motion.

On January 30, 2012, the Trial Court heard the Summary Judgment motion, and permitted oral argument at some length. The Trial Court took the matter under submission. (A1677-1738)

The Trial Court thereafter ruled to grant Summary Judgment in favor of Balboa, and to enter judgment thereon. (A2-35).

The only matter remaining was a declaratory relief claim by Seirus regarding one Balboa design patent, the Balboa D566,339 ("the Balboa '339 Design Patent"). The Balboa '339 Design Patent was subsequently transferred to public domain.

Accordingly, all matters of the *Balboa* case were completed, and Final Judgment in favor of Balboa was entered on June 29, 2012 (A1)

Seirus filed Notice of Appeal on July 26, 2012. (A2290-91).

## BALBOA ARGUMENT

### Summary of Argument

Affirming Summary Judgment in favor of Balboa as to the Seirus asserted Trade Dress (product and packaging) is proper. Seirus had the burden of proof and Seirus failed to meet its burden of proof with respect to the threshold issues of non-functionality and secondary meaning.

As to the asserted procedural errors, none were committed by the Court below. While Seirus asserts that it was error to take up summary judgment prior to the close of discovery, such argument does not find favor under the facts or the law. Seirus had [1] more than two years to gather its evidence regarding the non-functionality of both its product and packaging trade dresses, [2] had been given similar opportunities to gather this same evidence in cases filed before *Balboa*, [3] was on notice of the functionality of its asserted product trade dress due to the 1999 rejection before the US Patent & Trademark Office and the TTAB, precisely because of the product's inherent functionality. Seirus knew that those USPTO findings were underscored by the evidence of Seirus' utility patents and by Seirus' own evidence of utility/function

as to its product and packaging.

While Seirus may be understood to infer an improper collateral estoppel ruling in Balboa, the District Court did not apply collateral estoppel to its trade dress rulings, even though it was entitled to do so. The Trial Court clearly engaged in a detailed analysis of each element of the rules that Seirus failed to satisfy.

Summary Judgment as to the asserted trade dress was further proper as Balboa had the right to test Balboa's trade dress claims by requiring Seirus to provide the requisite evidence to the Court. Seirus filed suit against Balboa in October 2009. Balboa's Summary Judgment was heard in January 2012. In aggravation, Seirus had filed suit against Cabela's in January 2009, and was on the eve of trial in November 2011. In the *Cabela's* Summary Judgement, Seirus' asserted trade dress was found functional and it was determined that Seirus had failed to produce substantive evidence to establish secondary meaning in that prior proceeding.

As to the grant of summary judgment on ground of non-infringement of the '690 Patent, that judgment is properly affirmed. The accused products did not literally infringe on the '690 Patent and Seirus' argument under the doctrine of equivalents is barred due to prosecution history estoppel.

///

///

///

Once again, the Trial Court did not apply collateral estoppel to its decision regarding the '690 Patent even though it was entitled to do so. The Order unequivocally establishes that the Court addressed the relevant facts/admissible evidence in coming to its conclusion with respect to the Balboa case, inclusive of the Struebing testimony for Balboa.

The taking of Judicial Notice of the '690 Patent Prosecution History was clearly appropriate as [1] the History was a cognizable government record under *FED.R.EVID*., Rule 201, and [2] the History limited the patent's claims to only one, requiring that a pair of goggles be provided in combination with an article of clothing – expressly rejecting the previously written claims involving an article of clothing alone. (A11).

The District Court was also entitled to consider the prior Claims Construction Orders, particularly in *Cabela's*, as Seirus expressly agreed to adopt the applicable Claims Construction Order. (A3280). As an extension of the Claims Constructions, the *Cabela's* Court rejected the argument that the purchase of goggles and the purchase of an article of clothing at the same time constituted a combination within the claim of the '690 patent.

Again, Seirus had the opportunity - from at least 2009 forward - to produce evidence of the sale of a goggle in combination with an article of clothing. Seirus did not meet that key evidentiary requirement. (A21).

A failure of material proof by the non-moving party permits the entry of summary judgment.

The grant of Summary Judgment as to invalidity of the '804 Patent on grounds of obviousness is also properly affirmed.

Procedurally, the Trial Court properly granted Judicial Notice under *FED.R.EVID*, Rule 201 of the eleven (11) patents cited as prior art, inclusive of the six (6) references that were not considered by the patent examiner at the time of the '804 application. Judicial Notice was further appropriate as to the Patent Prosecution History confirming same - all government records of ready ascertainment. In light of the prior art, each and every one of the claims of the '804 patent were held to be invalid due to obviousness. The issue of collateral estoppel was discussed by the District Court, after the Court's lengthy review and determination process on the facts and law. The Court mentioned, almost in passing, that - as an alternative basis - the doctrine could be applied. The Court was well within its discretion to do so, considering the fact that a final judgment had been rendered under the merits, regarding the same patent, where Seirus was the plaintiff in Cabela's and the same judge presided, which Judge granted summary judgment in favor of Cabela's due to the finding of obviousness of the '804 patent's based upon invalidating prior art.

///

# I. DISTRICT COURT DID NOT ERR IN DENYING RULE 56. COURT PROPERLY FOUND THAT SEIRUS HAD AMPLE OPPORTUNITY TO CONDUCT DISCOVERY IN PRIOR CASES AND IN THE BALBOA CASE

As part of its opposition to the Balboa Motion for Summary Judgment/Adjudication, Seirus filed a Motion under FED.R.CIV.P., Rule 56(d) (Dkt 86; Ind. 33; A1292-1494)). The Trial Court denied the Motion stating:

> "The Court denies Seirus' motion under Rule 56(d). Given that Seirus filed this action in 2009, the Court concludes that the parties have had adequate time to litigate this matter".

*Trial Court Order*, Pg 4, fn 2 (January 30, 2012) (Dkt. 110; Ind. 2; A2-35).

## Standard for Review

This issue is reviewed under an abuse of discretion standard, inclusive of evidentiary rulings. *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 768, 62 U.S.P.Q.2d 1640, 1644 (Fed. Cir. 2002). The Trial Court is well within its power to deny Rule 56(d) relief where "the district court is dissatisfied with the non-movant's explanations as to why he cannot rebut the movant's motion for summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 932 (11th Cir. 1989).

It is undisputed that Seirus filed suit against Balboa on October 14, 2009. Moreover, it is not disputed that Seirus had filed suit against other defendants on the same '804 and '690 patents, and upon the same asserted common law trade dress - Bula America filed in December 2008; Cabela's/Ross Glove in January 2009; Gordini

in October 2009; Kombi in October 2009; Turtle Fur in October 2009; and Da Kine Hawai'i in October 2009.  Balboa *Notice of Related Cases*, Index 199; (A5693); Index 200-202 (A5701-5703) (Transfer Orders).

It is also not disputed that Seirus delayed service upon Balboa for almost four months.  *Ibid*., at Pg 5.

### Rule 56 and Prior Cases Going Back to 2003 - Opportunity

It is not disputed that Seirus had engaged in a campaign of litigation on the '804 and '690 Patents, and on its asserted common law trade dress - Bula America filed June 2003 (Utah); Do-Gree Fashions filed April 2005 (Utah); Volcom filed April 2007 (Utah); Bula America filed October 2008 (Utah); Asia Direct filed January 2009 (Cal); and Asia Direct II filed June 2009 (Cal).  *Id* at 6-8.

### Rule 56 As to Trade Dress - USPTO Actions in 1999 - Opportunity

With direct respect to the Seirus asserted common law trade dress, Seirus knew, not later than January 1999, that its asserted dress (configuration of a ski mask) was functional, had not acquired distinctiveness due to a lack of requisite evidence, and was invalid as trade dress - as found by the USPTO/TTAB.  *In Re: Edward Ski Products, Inc*., 49 USPQ2d 2001 (January 20, 1999).  *Balboa Answer*, Exhibit J; A145-324)

///

///

**Evidence within Seirus' Possession and/or Control - 56 Properly Denied**

The record of the case below clearly established adequate grounds for the Trial Court's denial of the Seirus Rule 56 Motion.

On the trade dress issue alone, Seirus had the burden of proof to establish its' claims of secondary meaning. Seirus had almost thirteen (13) years in which to gain the necessary evidence by which to support its claims for secondary meaning. By January 2012, Seirus had not done so.

As to the '804 patent, same was ruled invalid on the basis of obviousness as established, in part, by a large showing of invalidating prior art. (A8-11) (Patents 5,025,507; 4,718, 123; 2,686,317; 5,109,588; 202,262; 4,768,235; 4,300,240; 4,825,474; 772,148; 4,941,211; and 766,963). No additional discovery of Balboa would have changed those matters of record before the USPTO. The claims and foundations for the assertion of invalidating prior art by Balboa was not a novel claim to Seirus. Cabela's and Ross Glove had long before raised those patents and arguments to Seirus.

As to the '690 Patent, Seirus again bore the burden of proof, and again failed in that burden. Seirus filed suit on the basis that Balboa was, in part, infringing the '690 Patent by selling an article of clothing in conjunction with a sports goggle. *Seirus Complaint*, (A115-130).

By Seirus' own admission all it pointed to were websites by others - not by

Balboa.  As the Trial Court stated:

> "Seirus attempts to rely on websites to show that Defendants permit customers to purchase balaclavas and goggles together. (Doc. No. 79.) In Cabela's, this Court previously rejected Seirus' argument that the purchase of goggles and an article of clothing at the same time constitutes a combination within claim 1 of the '690 patent. (Cabela's, No. 09-CV-102-H (WMC), Doc. No. 440 at 11.) None of the exhibits produced by Seirus show Defendants selling goggles in combination with balaclavas. Instead, the exhibits merely demonstrate that Defendants sell goggles, balaclavas, and other products. There is no showing in the exhibits or otherwise that Defendants sell goggles in combination with an article of clothing.  Therefore, the Court concludes that Defendants do not meet the combination limitation of claim 1. Accordingly, there is no triable issue of material fact regarding literal or inducing infringement and the Court grants Defendants' motion for summary judgment of noninfringement of the '690 patent."

*Trial Court Order*, Dkt 110 (A21)(A5666)

## Seirus Cannot Argue in a Vacuum

It is undisputed that Seirus has raised the subject patents and common law trade dress in many cases over several years.  Again, the asserted common law trade dress went back to 1999 (adverse decision/rejection by USPTO/TTAB).  (Index 16, *Balboa Answer*, Exhibit J; A145-324).

Here, Seirus states that it was denied the opportunity to discover facts necessary to oppose the Balboa Summary Judgment/Adjudication.  The fact is that Balboa's Summary Judgment pointed to evidence set forth in *Cabela's*.

Balboa pointed to discovery in that case, including, but not limited to:

///

14

1.    The testimony of Seirus President, Joseph Edwards wherein Mr. Edwards stated, "[a] beak over the person's nose creates protection from the elements." (Doc. No. 229-3, Edwards Dep. Tr. at 84:17-18.) (A3345)

2.    The testimony of Seirus President, Joseph Edwards that the "articulated chin" creates a more contoured fit, and a balaclava "with an articulated chin would fit closer to that area of my body, as opposed to one that was not articulated would fit more loosely." (Doc. No. 229-3, Murray Decl. ¶ 2, Exh. B; Edwards Dep. Tr. at 89:10-12.)(A3326, A3348)

3.    The testimony of Seirus co-President, Mike Carey that the opening below the nose and above the mouth assists the wearer in breathing. (Doc. No. 229-1, Murray Decl. ¶ 5; Doc. No. 229-5 Exh. D, Carey Dep. Tr. at 68:1-8). (A3326, A3381)

4.    The testimony of Seirus co-President, Mike Carey that the holes located near the mouth helps to increase airflow). (Doc. No. 229-1, Murray Decl. ¶ 5; Doc. No. 229-5 Exh. D, Carey Dep. Tr. at 68:23-69:14). (A3326, A3381)

5.    The testimony of Seirus co-President, Mike Carey that the opening below the nose and above the mouth assists the wearer in breathing. (Doc. No. 229-1, Murray Decl. ¶ 5; Doc. No. 229-5 Exh. D; Carey Dep. Tr. at 68:1-8)(A3326, A3381)

6.    The fact that Seirus had a utility patent, 4,300,240 which taught a cold weather mask sized and shaped to fit about the face, an angled nose, and an arcuate

15

chin. (Dkt 229-1, Murray Decl., ¶ 16, Exh. O).(A3327, A3456-3463)

7.      The fact that Seirus had a utility patent, 4,825,474 which taught a cold weather mask with a curved upper edge contoured along the lower part of the eye socket areas. (Dkt 229-1, Murray Decl., ¶ 17, Exh. P).(A3464-3471)

8.      The testimony of Seirus co-President, Mike Carey that the packaging aids consumers in viewing the product.  As an alternative, Carey stated one could place the product in a box - but then admitted the consumer would be unable to view the product.  Both Carey and Jack Autry (Seirus Sales Manager) testified that the packaging was to display the side profile.  (Dkt 229-1, Murray Decl., ¶ 5; Exh. D, Carey Dep. Tr. at 90:22-92:4; 99:22-100:8; 101:9-13; 102:3-8; and Exh. J, Autry Dep. Tr. at 61:7-10, 68:14-69:10). (A3375, A3393, A3400-3402)(A3429, 3432-3433)

9.      The testimony of a competitor, Mr. Macrovitch, stating that it was more difficult and expensive to package other than in a profile packaging, and setting forth in detail the reasons. (Dkt 229-1, Murray Decl., ¶ 6, Exh. E, Macrovitch Dep. Tr. at 89:24-92:14).(A3326, A3313-3316)

10.      The testimony of Mr. Macrovitch that the Seirus packaging was a reproduction of packaging commonly used in the industry. (Dkt 229-1, Murray Decl., ¶ 6, Exh. E, Macrovitch Dep. Tr. at 90:14-91:5). (A3326, A3314-3315)

11.      Seirus advertised its products as "the hard core cold weather face, head and neck protection"; as the "best way to stay warm and dry in the coldest

conditions;" as having a "contoured Neofleece face mask for wind-waterproof, dry warmth & comfort;" for helping users to "stay warm and dry in cold wet weather;" as having a "vent at nose holes and vent holes at the mouth to allow for free breathing." (Dkt 229-1, Murray Decl., ¶ 9, 12, 13, 14, Exhs. H, K, L, M, Autry Dep. Tr. at 89:24-92:14). (A3326-3327, A3423-3435)

By the testimony of Seirus' own president(s) and officers (sales manager), the functionality of the Seirus asserted common law trade dress as to packaging was established.

### As to the '804 Patent

The '804 Patent was ruled invalid on the basis of obviousness based, in part, on some eleven (11) prior art citations. A review of the Jaegers Declaration in Support of the Rule 56 Motion does not even identify the '804 Patent (Axxx). All that Mr. Jaegers does is to make broad assertions of types of discovery, including "financial statements". There was a lack of requisite specificity. However, the issue was one of legal argument - whether or not the '804 Patent was obvious in light of prior art and construing rules/law.

### As to the '690 Patent

As to the '690 Patent, three separate claims constructions - Bula, Cabela's/Ross Glove, and Balboa all agreed with Seirus that the claim "combination of a sport goggle and an article of protective clothing" was that the goggle element "must be

provided in combination with an article of clothing."

Balboa put forward competent evidence in the form of testimony. The burden shifted to Seirus to come forward with competent evidence to establish a genuine dispute of fact. *Celotex Corp v. Catrett*, 477 US 317, 322 (1986); *Anderson v Liberty Lobby*, 477 US 242, 256 (1986). Seirus had been making the same allegations for several years, both before *Balboa* and in *Balboa*. Seirus had the full opportunity to gain any necessary information.

## The Scheduling Order - Summary Judgement At Any Time

The law in this instance is clear - "a party may file a motion for summary judgment at any time." *FED.R.CIV.P.*, Rule 56[b].

The standard for a Rule 56[d] motion is that the non-moving party must establish that it has not had the opportunity to conduct necessary discovery. *Anderson*, 477 US at 250 n. 5 (1986). Clearly, by any standard, Seirus had more than the opportunity - in *Balboa*, and in prior cases brought before many Courts.

A Scheduling Order is the method through which evidence is to be marshaled and how the case it to be handled, inclusive of setting dates not later than which tasks are to be accomplished. *Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

It is undisputed that Seirus had the full benefit of the Scheduling Order in *Cabela's*, specifically including full discovery. The same claims of invalidity, non-

infringement and invalidity of unregistered trade dress were presented therein, including, but not limited to, prior art citations, claims construction as to mask and goggles, and function/no acquired distinctiveness as to unregistered trade dress. Seirus had not less than from 1999 as to trade dress claims and not less than from 2009 through the *Cabela's* litigation in these matters.

Seirus cannot reasonably advance the claim that it did not have the <u>opportunity</u> to seek to acquire facts to defeat Balboa's Motion for Summary Judgment. The Court did not err in denying the Seirus request.

Contrary to Seirus' assertions, the law is clear - "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of discovery." *FED.R.CIV.P.*, Rule 56(b). Again, Seirus originally filed against Balboa in October 2009. Balboa's Summary Judgment was heard in January 2012.

In seeking to support its argument, Seirus states, "this court recently found summary judgment premature when a district court did not allow additional discovery where the evidence sought was essential to adequately oppose summary judgment." *Appellant's Opening Brief* at 32, citing to *Baron Services Inc., v. Media Weather Innovations LLC*, 717 F.3d 907 (Fed. Cir. 2013).

In *Baron Services*, the court based their decision on the fact that the parties hadn't yet enjoyed the benefit of Markman proceedings or exchanged invalidity and

infringement contentions.

In stark contrast, Seirus and Balboa did in fact exchange invalidity and infringement contentions, and the parties mutually agreed to adopt the *Cabela's* court claims construction.

As a result, the *Balboa* court was more than entitled to rely on this evidence to make its decision and consequentially *Baron Services* has no precedential effect.

In another case on which Seirus bases it's argument, the court remanded because the plaintiff had not been able to engage in any discovery, whatsoever. *Metropolitan Life Ins. v. Bancorp Services, LLC.*, 527 F.3d 1330, 1338 (Fed. Cir. 2008) Unlike the parties in that case, Seirus and Balboa exchanged preliminary invalidity and infringement contentions, enjoyed the benefit of a mutually agreed upon claim construction, and exchanged interrogatories and documents. However, it must be remembered that Seirus had the burden of proof with respect to, *inter alia*, function and unregistered trade dress; secondary meaning and unregistered trade dress; that prior art did not invalidate claims, and that there was actual infringement of a claim.

These were all matters well within Seirus' ability to establish or to contradict. No amount of discovery would impact the finding of function as to the trade dress, as already determined by the Patent Office, for example.

Seirus also points to an appellate court reversal of a grant of summary judgment, which summary judgment was filed less than a month after the plaintiff

filed suit. *Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation,* 323 F.3d 767, 773 (9th Cir. 2003.) Unlike *Burlington*, Seirus filed suit in October 2009 and Summary Judgment was heard in 2012. Moreover, Seirus litigated the same issues in *Cabela's*, starting in January 2009, and summary judgment was granted on the eve of trial in October/November 2011 - again based in large part on Seirus' failures to submit cognizable evidence to defeat the defenses.

The law is clear – it is well within a court's discretion to refuse to grant a Rule 56(d) Motion "if the district court is dissatisfied with the nonmovant's explanations as to why he cannot rebut the movant's motion for summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 932 (11th Cir. 1989).

### Denial of Stay of Case was Proper

Seirus alternatively asserts that the *Balboa* case should have been stayed, pending *Cabela's*, citing to *Berman v. Dept. of Interior*, 447 Fed.Appx 186, 190 (Fed. Cir. 2011). However, the stay in *Berman* resulted from a stipulation of the parties. "Berman appealed the Board's decision to this court, and the parties agreed to stay the appeal pending the outcome of Berman's appeal of the related civil verdict." Seirus had the option to seek a stay by filing the appropriate motion after the *Cabela's* rulings, as Seirus knew it was going to appeal those judgments, yet failed to do so. *FED.R.APP.P.*, Rule 8[a]. Further, a Court is not bound to grant a stay. "Precedent does not command .. a stay. .". *Berman, 447 Fed. Appx.*, at 195.

## II. DISTRICT COURT DID NOT ERR IN RULING THE UNREGISTERED TRADE DRESS INVALID AS TO BOTH PRODUCT AND PACKAGING – JUDGMENT IS PROPERLY AFFIRMED.

Seirus' alleged product trade dress is not registered with the United States Patent and Trademark Office. Seirus claimed the dress of:

"headwear including an angled beak in combination with

[1]  logo placed proximate to the cheek;

[2]  opening below the nose/above the mouth;

[3]  holes proximate to the mouth in a diamond pattern;

[4]  articulated chin, or

[5]  equilateral curvature underlying the eyes, that when presented, the combination resembles the contours and angles of the human face."

As noted by the Court, the "alleged trade dress (was) identical to the one Seirus alleged in *Cabela's*. (No. 09-CV-102-H-(WMC), Doc. No. 229-1, Murray Decl., ¶ 2, Ex. A at 4)". Order, Dkt 110, (A3326, A3335).

Seirus bears the burden of proof in meeting the requisite elements for protection based on an unregistered/common law claim. Seirus was required to prove each element:

[1]  the trade dress is nonfunctional;

[2]  the plaintiff owns a protectable trade dress in a clearly

articulated design or combination of elements that is either

inherently distinctive or has acquired distinctiveness through

secondary meaning; and

[3]  the accused mark or trade dress creates a likelihood of

confusion as to source, or as to sponsorship, affiliation or

connection.

15 U.S.C. § 1125(a)(3); *Art Attacks Ink, LLC v. MGA Entertainment, Inc*, 581 F.3d

1138, 1145 (9th Cir. 2009).

### Function

Seirus does not truly contest the applicable law which governs unregistered

trade dress claims.  Seirus does not contest that protection is granted only to non-

functional features.  *Disc Golf Ass'n v. Championship Disc., Inc*., 158 F.3d 1002,

1006 (9th Cir. 1998) "The Ninth Circuit weighs four factors in determining

functionality of a product trade feature: (1) whether the design yields a utilitarian

advantage; (2) whether alternative designs are available; (3) whether advertising touts

the utilitarian advantages of the design; and (4) whether the particular design results

from comparatively simple or inexpensive method of manufacturing." *Id*.

Seirus does not contest that function is found where the claimed feature "is

essential to the use or purpose of the article or if it affects the cost or quality of the

article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc*., 532 US 23, 33 (2001); *Rachel v. Banana Republic*, Inc., 831 F.2d 1503, 1506 (9th Cir. 1987) (product benefit versus identification of producer).

In *Balboa*, the District Court was empowered to take Judicial Notice of evidence adduced in the *Cabela's* case, particularly admissions by Seirus regarding function:

1. The testimony of Seirus President, Joseph Edwards wherein Mr. Edwards stated, "[a] beak over the person's nose creates protection from the elements." (Doc. No. 229-3, Exh B, Edwards Dep. Tr. at 84:17-18.) (A3345)

2. The testimony of Seirus President, Joseph Edwards that the "articulated chin" creates a more contoured fit, and a balaclava "with an articulated chin would fit closer to that area of my body, as opposed to one that was not articulated would fit more loosely." (Doc. No. 229-1, Murray Decl. ¶ 2, Exh. B; Edwards Dep. Tr. at 89:10-12.) (A3326, A3348)

3. The testimony of Seirus co-President, Mike Carey that the opening below the nose and above the mouth assists the wearer in breathing. (Doc. No. 229-1, Murray Decl. ¶ 5; Dkt. 229-5 Exh. D; Carey Dep. Tr. at 68:1-8). (3326, A3381)

4.     The testimony of Seirus co-President, Mike Carey that the holes located near the mouth helps to increase airflow. (Doc.  No.  229-1, Murray  Decl.  ¶ 5, Dkt. 229-5Exh. D; Carey Dep. Tr. at 68:23-69:14). (A3326, A3381)

5.     The testimony of Seirus co-President, Mike Carey that the opening below the nose and above the mouth assists the wearer in breathing. (Doc.  No. 229-1,  Murray  Decl.  ¶ 5, Dkt. 229-5  Exh. D; Carey Dep. Tr. at 68:1-8) (A3327, A3381).

6.     The testimony of Seirus co-President, Mike Carey that the packaging aids consumers in viewing the product.  As an alternative, Carey stated one could place the product in a box - but then admitted the consumer would be unable to view the product.  Both Carey and Jack Autry (Seirus Sales Manager) testified that the packaging was to display the side profile.  (Dkt 229-1, Murray Decl., ¶ 5, Exh. D, Carey Dep. Tr. at 90:22-92:4; 99:22-100:8; 101:9-13; 102:3-8; and Exh. J, Autry Dep. Tr. at 61:7-10, 68:14-69:10). (A3326, A3395, A3400, A3402, A3403)

The District Court's finding of function as to the Seirus asserted trade dress is further underscored by the findings and rulings of the US Patent & Trademark Office, inclusive of the Trademark Appeal Board (TTAB).  Seirus sought registration of its asserted trade dress  before the USPTO.  The USPTO denied registration in 1999,

holding as to function:

> "De Jure Functionality
>
> With respect to the first factor (utility patent), the Examining Attorney notes that the applicant itself has disclosed that a utility patent has been issued to the applicant's president, Joseph Edwards, for the mask (4,300,240). The Examining Attorney points to numerous structural elements set forth in the patent as evidence of the utilitarian advantages of the design of the applicants mask, including the specific configuration of the nose piece, the provision for a pocket around the lips so as to permit the breathing of prewarmed air, and the incorporation of a strap design which increases the ease of wearing the mask..."
>
> "[W]e find the evidence of record with respect to the first three factors points overwhelmingly to the conclusion that applicants product design, which it seeks to register as a trade[dress], is de jure functional. It is the combination of the utilitarian advantages resulting from the structural elements claimed in the utility patent for the ski mask (elements which dictate the overall configuration that the applicant claims as its [dress], the utilitarian advantages touted by applicant's advertising, and the lack of evidence of equivalent alternative designs which leads us to the determination that applicant's ski mask design has been shown to be a superior design to those of others. We need not determine that it is the superior design; so long as it a superior design, or one of the few superior designs, the test for de jure functionality has been met and registration is refused."

[Citing to *In Re: Morton-Norwich Products, Inc*, 671 F.2d 1332, 213 USPQ 9 (CCPA 1982); *In Re: Caterpillar, Inc*, 43 USPQ2d (TTAB 1997); *In Re: American Nat'l Can Co*, 41 USPQ2d 1841 (TTAB 1997); *In Re: Honeywell, Inc*, 8 USPQ2d 1600 (TTAB 1988); *In Re: Weber-Stephen Products Co*, 3 USPQ2d 1659 (TTAB 1987); *In Re: Controls Corp of America*, 46 USPQ2d 1308 (TTAB 1998)].

///

///

## Utility Patents Underscore Function

Exercise of judicial notice of utility patents in making a determination that product trade dress is functional is proper. "It is well established that a court can take judicial notice of patents and published applications." *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n. 27 (Fed. Cir. 1993); *Fed.R.Evid. 201*. It is well settled that "[a] utility patent is strong evidence that the features therein claimed are functional." (A25) (citing to *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30).

As the District Court recognized, "Seirus has an expired utility patent, U.S. Patent No. 4,300,240, claiming a cold weather mask sized and shaped to fit about the face, an angled nose, and an arcuate chin. . . . Further, Seirus has an expired utility patent, US Patent No. 4,825,474, claiming a cold weather mask with a curved upper edge contoured along the lower part of the eye socket areas." (A25). Despite the fact that this utility patent is expired, Seirus seeks perpetual protection of certain claims by attempting to re-characterize these claims as non-functional. "[I]f a product's functional features could be used as trademarks, a monopoly could be achieved without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity)." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc*., 158 F.3d 1002, 1006 (9th Cir. 1998). Yet, that is precisely what Seirus seeks to do.

///

## Advertising and Function

"If a seller advertises the utilitarian advantages of a particular feature, this constitutes strong evidence of functionality." McCarthy 7:74 at 7-152.

The evidence as developed from discovery in *Cabela's* was that Seirus admittedly advertised its products as "the hard core cold weather face, head and neck protection," as the "best way to stay and dry in the coldest conditions;" as having a "contoured Neofleece face mask for wind-waterproof, dry warmth & comfort;" for helping users to "stay warm and dry in cold wet weather;" as having a "vent at nose holes and vent holes at the mouth to allow for free breathing." (Dkt 229, Murray Decl., ¶ 9, 12, 13, 14, Exhs. H, K, L, M, Autry Dep. Tr. at 89:24-92:14). (A3326-3327)

This was much the same evidence that was adduced by Seirus' admissions before the US Patent & Trademark Office. In denying registration, the USPTO stated:

> We turn next to the second factor, the touting by the originator (Seirus) of the product design of the utilitarian advantages of this (trade dress) in its advertising material...
>
> Our new high tech engineering means comfort, warmth, easy on and off, superb fit and ventilation with no fogging
>
> Thermal face protection
>
> Insulates, ventilates and will not fog goggles
>
> ...scientifically designed ventilating system keeps you warm and breathing even in waist-deep powder

Seirus claims that it's advertising that is "directed at the snow sports industry more prominently emphasizes the overall aesthetics and appearance of its trade dress products, rather than any perceived functional features of such products." *Appellant's Opening Brief* at 37. Seirus claims that the Court ignored its assertion in making its determination. To the contrary, the Court did take those Seirus assertions in its determination, citing to the fact that "Seirus promotes the NEOFLEECE COMBO SCARF as '[o]ffering the ultimate protection from the cold' and having a "[v]ent at nose and vent holes at mouth [to] allow for breathing." (A24)

The Court properly concluded that Seirus' advertising touted the utilitarian benefits of the product's design by promising to protect a user from the cold, while allowing venting for breathing. *Id*.

The non-moving party may not oppose a summary judgment motion by "mere allegations or denials" or by seeking to contradict its own prior facts. *Anderson*, 477 US at 256. The evidence proffered by Balboa established no genuine issue remained. The law is clear. "When a plaintiff fails to produce evidence such that a reasonable trier of fact could find the design nonfunctional, the district court must enter summary judgment in favor of the defendant." *Continental Lab Products, Inc v Medax, Int'l, Inc*., 14 F.Supp.2d 992, 1014-1015 (SD Cal. 2000) citing to *Disc Golf*, 158 F.3d at 1009-1010. The evidence clearly supported the District Court's finding of function.

///

# Lack of Secondary Meaning

The determination that an asserted trade dress fails on ground of function is sufficient to end the dispute. However, the District Court engaged in a detailed analysis of the evidence (or lack thereof) with respect to the element of acquired distinctiveness/secondary meaning, ultimately determining that Seirus had failed to meet its burden of proof to establish secondary meaning. *Two Pesos, Inc v. Taco Cabana, Inc*, 505 US 763, 768 (1992) (as to inherently distinctive); *Wal-Mart Stores, Inc v Samora Bros, Inc*, 529 US 205, 216 (2000) (no inherent distinctiveness in dress; proponent must prove secondary meaning).

"Whether trade dress has secondary meaning is a question of fact," subject to the clearly erroneous standard of review. *Clicks Billiards Inc. v. Sixshooters Inc*., 251 F.3d 1252, 1262 (9th Cir. 2001) citing to *First Brands Corp. v. Fred Meyer, Inc*. 809 F.2d 1378, 1383 (9th Cir. 1987). "Trade dress in product configurations such as those at issue in this case can never be inherently distinctive." *Wal-Mart Stores, Inc. v. Samara Bros*., 529 U.S. 205, 213 (2000). Instead, the proponent of the product configuration must show that the product configuration has acquired distinctiveness – or secondary meaning. *Id* at 216.

Secondary meaning, or acquired distinctiveness is the "mental association by a substantial segment of consumers and potential customers between the alleged trade dress and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc*., 778

30

F.2d 1352, 1354 (9th Cir. 1985) (en banc) (internal quotations omitted)

Acquired distinctiveness, or "[s]econdary meaning may be established either through direct or circumstantial evidence." *Express, LLC v. Forever 21, Inc*., 2010 WL 3489308 (C.D.Cal. Sep. 2, 2010). "Direct evidence includes results of an expert survey or direct consumer testimony." *Yankee Candle Co. v. Bridgewater Candle Co*., 259 F.3d 25, 43 (1st Cir. 2011). Alternatively, a plaintiff may also establish secondary meaning through circumstantial evidence, such as: exclusivity, manner and length of use, amount and manner of advertising, amount of sales and the number of customers, and plaintiff's established place in the market." *Balboa* No. 09-CV-2274-H-WMC (A-26) (Citing to *Clamp Mfg. Co. v. Enco Mfg.Co*., 870 F.2d 512, 517 (9th Cir. 1989).

Revisiting Seirus' Rule 56[d] argument, the trade dress issues are a prime example of the propriety of the District Court's denial. The evidence which Seirus was required to  establish was within Seirus' own control, e.g. marketing surveys, consumer testimony, and etcetera.    *Yankee Candle Co v. Bridgewater Candle Co*., 259 F.3d 25, 43 (1st Cir. 2001) (direct evidence by expert surveys/consumer testimony) See also, *Walker & Zanger, Inc v. Paragon Industries, Inc*, 549 F.Supp2d 1168 (ND Cal 2007). *Clamp Mfg Co v. Enco Mfg Co*, 870 F.2d 512, 517 (9th Cir 1989) (circumstantial evidence via showing of "exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and number of customers AND plaintiff's established place in the market" )(emp add).  See also, *Continental*

*Lab*, 114 F.Supp. at 1000.

Such facts could have been produced without discovery from Balboa.  As the Trial Court noted, "[s]ignificantly lacking from Seirus' record is any evidence of consumer surveys or proof of secondary meaning. Seirus' marketing and media evidence does not prove Seirus' products acquired secondary meaning." (A27). Again, its is underscored that the USPTO came to the same conclusion in denying registration:

> "Our holding of de jure functionality bars registration, regardless of any showing of acquired distinctiveness...
>
> The deficiency in applicant's claim of acquired distinctiveness lies in the absence of any evidence of the promotion by the applicant of the configuration of the its ski mask as a trademark.  While the product design may be shown on each and every advertisement, there is no indication that potential purchasers would view this as more than a picture of the goods.  See In Re: Pingal Enterprises, Inc, 46 USPQ 1811 (TTAB 1998) ...
>
> Moreover, there is no evidence to support recognition by the ultimate purchaser of the configuration as an indication of origin. The assertions of buyers of the masks for resale..who know the the source of the masks, cannot serve to establish that the ultimate purchasers would recognize the product design as an indication that it originates from applicant.

(Index 16, *Balboa Answer*, Exhibit J; A145-324).

Indeed, the District Court held:

> "Following the Court's ruling in Cabela's .. The Court has permitted Seirus an opportunity to show secondary meaning in this case (Balboa).  Significantly lacking from Seirus' record is

any evidence of consumer surveys or proof of secondary meaning. Seirus' marketing and media evidence does not prove that Seirus' products acquired secondary meaning...

In fact, Seirus does not cite any evidence from consumer surveys or consumer testimony. Instead, Seirus cites testimony from a Seirus representative who states that Seirus' evidence of secondary meaning comes from the representatives "general communication with consumers I see, people I see, buyers I see, reps I see and talk to". (Doc. No. 79, Ex. 10 at 51 to Murphey Decl.).

*Trial Court Order*, Dkt 110, (A26:15-27:2).

The District Court pointed directly to the fact that:

"Seirus' Co-Presidents, Edwards and Carey (both) testified that neither had knowledge of any surveys, formal or informal, or studies of consumer recognition and neither could recall the name of an individual who could testify as to the acquired distinctiveness..."

*Id*., citing to Murray Dec., Dkt 229 (A3326-3327); See also, Balboa Request for Judicial Notice (A1495-1541).

The District Court findings echo the findings of the Trademark Office some ten years earlier:

"... We have taken the alternative refusal under Section 2(f).. The deficiency in applicant's claim of acquired distinctiveness lies in the absence of any evidence...as a means of recognizing applicant as the source of the product.."

[Citing to *Lanham Act*, Section 2(f); *In Re: Pingel Enterprises, Inc*, 46 USPQ2d 1811 (TTAB 1998); *In Re: Semel*, 189 USPQ 285 (TTAB 1975); *Thomas & Betts Corp v. Panduit Corp*, 65 F.3d 654, 36 USPQ2D 1065 (7th Cir. 1995)]

(Index 16, *Balboa Answer*, Exhibit J; A145-324).

## Copying Assertion Insufficient

As to copying, it is not disputed that Seirus was required to establish that any asserted copying was not the use of functional features, which does not support secondary meaning. *Fuddruckers, Inc v. Doc's B.R. Others, Inc*, 826 F.2d 837, 844-45 (9th Cir 1987) ("Competitors may intentionally copy product features for a variety of reasons. Competitors may, for example, choose to copy wholly functional features that they perceive as lacking any secondary meaning because of those features' intrinsic economic benefits").

Seirus offered a side by side comparison of Seirus' products with Balboa's products seeking to establish an intentional copying basis for secondary meaning. The Trial Court, upon review, determined that the Seirus exhibit "does not raise a triable issue of fact of secondary meaning. Competitors may copy features that are wholly functional that they perceive lack secondary meaning. The Court concludes that Seirus has not met its burden of proof..". *Order*, Dkt 110, (A26:10-14).

The District Court's determinations were in consonance with the earlier determinations made by the USPTO in denying registration:

> [i]t would appear that by granting the trade[dress] registration presently being sought by the applicant, we would be hindering competitors from manufacturing copies which would be truly equivalent to applicant's design. In other words, we would be perpetuating the protection which has run its term in the patent, a

result contrary to the public policy rationale behind the functionality doctrine.

(Index 16, *Balboa Answer*, Exhibit J; A145-324).

### Simple Manufacture/Alternatives

Although the court applied only a limited analysis in this area, it held that the facemasks are manufactured in such a way as to mimic the contours of a person's face from the elements and to protect the wearer's face from the cold and permitting the user to breathe, thus resulting in a comparatively simple method of manufacture. (A24:22-26) Seirus failed to provide any compelling evidence to prove anything to the contrary and as a result, the court held that this factor weighed in favor of a finding of functionality. Additionally, the court found Seirus' arguments regarding the availability of alternative designs especially unpersuasive. *Ibid*.

### The New Trade Dress Claim in Opposition to Summary Judgment

On January 16, 2012, as part of the Seirus Opposition to the Balboa Summary Judgment Motion (and that of Gordini/Kombi), Seirus claimed a new and different common law trade dress to that which was invalidated in Cabela's in October 2011 (see, above). The new unregistered, common law asserted dress was:

[1]     an angled beak

[2]     a triangular opening below the nose and above the mouth;

[3]     a diamond shaped set of holes in the mouth area;

[4]    a curved chin area;

[5]    an equilateral concave curved opening from the top of the nose to underneath the eyes; and

[6]    a logo placed proximate to the cheek bone

[7]    the color black

*Ibid*, citing to Dkt 79 at 4.

Accordingly, Seirus' "new" claims were not part of any prior complaint or otherwise noticed to Balboa at the time of the motion.  Seirus "prosecuted" the original trade dress with prior defendants, including Cabela's up until the time it was invalidated in the Cabela's Case.  By extension, the "new" asserted dress was therefore only a couple of month's old at the time of Balboa's filing and still unknown to Balboa until the January 16, 2012 opposition filing by Seirus.

**Comparison of the "Old" and the "New" Trade Dress**

| ORIGINAL TRADE DRESS | NEWLY ALLEGED TRADE DRESS |
|---|---|
| Headwear including an angled beak in combination with: | An angled beak |
| Logo placed proximate the cheek | Logo placed proximate the cheek *bone* |
| Opening below the nose/above the mouth | A *triangular* opening below the nose/above the mouth |
|  |  |

| | |
|---|---|
| Holes proximate the wearer's mouth in a diamond pattern | A diamond shaped set of holes in the mouth area |
| Articulated chin | A *curved* chin area |
| *OR* | *AND* |
| Equilateral curvature underlying the eyes, that when presented, the combination resembles the contours and angles of the human face | Equilateral concave curved opening from the top of the nose to underneath the eyes |
| | The color black |

A direct or plain comparison between the original and newly asserted alleged trade dress description, as above, reveals that the differences are negligible. In fact, the only truly discernible differences are the addition of the words triangular and bone (to cheek), and the addition of the color "black." In addition, there is functionally no difference between an articulated chin and one that is curved, as the result is identical.

As to Seirus' trade dress assertions, "[t]he Court concludes that Seirus' alleged product trade dress is functional. Seirus' design features do not distinguish the look of the products, but rather permit the user to breathe and see while wearing the product." (A24). The Court, upon detailed review, determined at the very least that (1) the angled beak, (2) the triangular opening below the nose and above the mouth, and (3) the equilateral concave opening from the top of the nose to underneath the eyes

were all necessary to provide protection of the wearer's face from cold, to allow the wearer to see, breathe and speak at the same time. All matters going function. Those very same functions are carried over into the "new" trade dress assertion. Finally, the combination of these elements result in greater functionality as it is primarily the combination which results in a product designed to mimic the contours of the human face so as to provide a better fit. Again, a finding of function ends further review, e.g.: secondary meaning

## Color "Black" Claim Insufficient

In order for the color black to hold weight as a protectable trade dress, Seirus would have to prove that the color black acts a symbol to distinguish the company's goods, and identifying their source, without serving any other significant purpose." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc*., 696 F.3d 206, 218 (2nd Cir. 2012); see *Qualitex v. Jacobson Products Co*., 514 US 159, 166 (1995)

While color may, in some circumstances, qualify for trade dress protection, it is undisputed that it "requires that a person 'us[e]' or 'inten[d] to use' the mark 'to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown. 15 USC § 1127; *Qualitex Co. v. Jacobson Products Co*., 514 U.S. 159, 162, 115 S. Ct. 1300, 1303,131 L. Ed. 2d 248, 253, 34 U.S.P.Q.2d 1161, 1162 (1995)

However, even if it has become distinctive of the applicant's goods, the color should only be protected provided that there is no competitive need for colors to remain available in the industry and the color is not functional. *Qualitex*,514 US at166

As with the discussion of secondary meaning, above, as with color, Seirus provided no evidence to indicate its consumers readily associate the color black with its products. Further, Seirus' claim of exclusive ownership of the color black with respect to its products would substantially undermine competition within the industry.

The Court, based on that review, properly found that Seirus did not provide evidence to establish requisite secondary meaning as to its new claim of the color black.

## No Likelihood of Confusion - Because No Trade Dress

The Court below, based on its detailed review, determined that the asserted dress was functional, thereby ending the discussion of trade validity in the negative. Nonetheless, the Court did analyze the issue of distinctiveness/secondary meaning. The Court determined that Seirus had failed to produce the requisite evidence to establish secondary meaning.

"Likelihood of Confusion exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Clicks Billiards Inc*., 251 F.3d 1252, 1265; citing to *Fuddruckers*, 826 F.2d at 845. "The factual elements

that make up likelihood of confusion include evidence of actual confusion, the defendant's intent in adopting the mark, similarity of marks, similarity of goods and marketing channels and the strength of the mark." *Clicks Billiards Inc*., 251 F.3d 1252, 1265

In short order, the court found that a detailed analysis regarding likelihood of confusion was unnecessary due to the fact that Seirus was unable to overcome the presumption of functionality of its products, nor produce any evidence of secondary meaning. The two threshold requirements going unmet, the asserted dress was therefore invalid, and the question of likelihood of confusion does not arise - "Because Seirus' products are functional and lack distinctiveness, Seirus' products are not protectable as trade dress. Accordingly, the Court need not address the parties' remaining arguments pertaining to likelihood of confusion". The District Court cited the clear support found in, amongst other cases, *Continental Lab*, 114 F.Supp.2d at 1016 n.22 ("having found that Continental cannot show two essential elements of trade dress infringement (distinctiveness or nonfunctionality), the Court need not reach the parties remaining arguments pertaining to likelihood of confusion"). (*Trial Court Order*, Dkt 110, A24:3-19).

///

///

///

**Asserted Unregistered Packaging Trade Dress Similarly Fails**

Revisiting the lengthy analysis of the asserted product trade dress under the applicable law discussed, the District Court determined that the packaging trade dress was not protectable.

As to Seirus' burden of proof regarding nonfunctionality, Seirus's co-president, Michael Carey, admitted that the profile display of the Seirus packaging aids consumers in viewing the product. Carey further admitted that an alternative design would be the use of a box; but it was further admitted that a customer would be unable to see the product until it was taken out of the box. (*Seirus v Cabela's*, Case 09-cv-102, Dkt 229, Murray Decl, Cary Depo. Tr. at 102:3-8)(*Order*, Dkt 110)(A29:19-26)(A3325-3330).

Further demonstration of function was shown by the testimony of Mr. Macrovitch, a competitor, that the Seirus packaging was a reproduction of packaging commonly used in the industry. (*Seirus v Cabela's*, Dkt 229-1, Murray Decl., ¶ 6, Dkt. 229-6 Exh. E, Macrovitch Dep. Tr. at 90:14-91:5)(A3326, A3414-3415). Further, that Mr. Macrovitch testified that it was more difficult and expensive to package other than in a profile packaging, and setting forth in detail the reasons. (*Ibid*., at 89:24-92:14).(A3413)

With respect to secondary meaning, the evidence deduced from the Macrovitch deposition was directly pointed to by the *Cabela's* Court as a key basis for its

determination of lack of secondary meaning. Contra to the requirement that Seirus had to establish that the packaging was a clear source identifier, the Court concurred that the Seirus packaging was a reproduction of generally used packaging in the industry:

> "There were quite a number of people that were using side profile packaging. I remember people like Turtle Fur were using it quite extensively. There were just a number of companies selling all sorts of accessories, you know, within our marketplace, mostly Balaclavas. If you went outside of our market, there were people selling scarves in the fashion market. It wasn't necessarily something that unique to put a face cardboard, you know, attached to a product. People in the Halloween mask business have been doing it for quite a while".

*Id*., Marcovitch Dep. Tr., at 90:14-91:5 (A3414-3416)

### Summary Judgment as to Trade Dress was Properly Granted

Balboa, as the moving party in this matter, had the initial burden to show that there was an absence of material fact (a fact affecting outcome); *e.g.*: there is no genuine dispute of material fact.

This may be shown by evidence that negates an essential element of the opposing party's claim or by showing that the opposing party did not provide sufficient evidence which would sustain its claims (those which it bears the burden of proof at trial). *Anderson v. Liberty Lobby, Inc*, 477 US 242, 248 (1986); *Celotex Corp v. Catrett*, 477 US 317, 322-23 (1986).

However, the non-moving party must rebut by substantial evidence that disputed facts exist. Mere allegations or denials of opposing evidence is insufficient. More than mere "metaphysical doubt" must be proffered. Contradictory declarations do not suffice. *Matsushita Electrical Indus. Co v. Zenith Radio Corp*, 475 US 574, 586 (1986).

Seirus failed to meet its requisite burdens of proof, despite having many years of opportunity in which to gather evidence to support their claim.

Seirus had their bite at the apple (for at least the third time) and cannot be heard to complain when they failed to meet their burden of proof - again.

## IV. DISTRICT COURT DID NOT ERR IN RULING THAT THE SEIRUS HEAD WEAR AND GOGGLE '690 PATENT WAS NOT INFRINGED BY BALBOA - SUMMARY JUDGMENT IS PROPERLY AFFIRMED

### Standard of Review

Appellate Review of the District Court's claim construction is de novo. *Cybor Corp., v. Fast Techs., Inc*., 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) "Whether the presumption of prosecution history estoppel precludes a patentee from asserting infringement against an alleged equivalent of an amended claim element is a question of law that we review without deference." *Pacific Coast Marine Windshields v. Malibu Boats*, 739 F.3d 694, 700 (Fed. Cir. 2014) Citing to *Honeywell Int'l Inc. v. Hamilton Sundstrand*, 370 F.3d 1131, 1139 (Fed. Cir. 2004)

Seirus asserted that Balboa infringed, literally or by equivalents the Seirus '690 Patent. The '690 Patent claimed, in pertinent part, a "combination of a sport goggle and an article of protective clothing". (Order, Dkt 110, A19:11-12).

## Agreed Construction

Seirus and Balboa agreed to the construction of the sole Claim of the '690 Patent, which accordingly became the Court's Claim Construction for the case.[3] The Claim was construed to require that the claimed sports goggle "must be provided in combination with an article of clothing". (Claims Construction, Dkt 71, A552-584).

## Standard for Infringement

The District Court analyzed the question of infringement of a utility patent on both the literal infringement standard and the doctrine of equivalents, stating "[l]iteral infringement of a claim of a utility patent is established when it is determined that 'every limitation in the claim is literally met by the accused device', citing to *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998).

It is well settled that in construing the meaning of words in a claim, when there is a choice, the narrower meaning of a word in a claim controls. Intellectual Property: Patents, Trademarks, and Copyright; in a nutshell 5th Edition, by Arthur R. Miller and Michael H. Davis (2012) § 8.2.

---

[3] In point of fact, Balboa and Seirus adopted the construction of the '690 Patent, Claim 1 from the Cabela's Claim Construction, which had been the adopted Claim 1 construction from the Bula Claim Construction, as per the agreement between Bula and Seirus.

Paragraph (b) of 35 USC § 112 "requires that the 'specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.* 73 F.3d 1573, 1581 (Fed.Cir.1996). "The primary purpose of the requirement is 'to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their respective rights." Id. at 1581, citing to *General Electric Co. v. Wabash Appliance Corp.*, 304 US. 364, 369, 58 S.Ct. 889, 902, 82 L.Ed 1402 (1938). As this Honorable Appellate Court has stated:

> "[w]ere we to allow [the patentee] to assert the broader of the two senses . . . we would undermine the fair notice function of the requirement that the patentee distinctly claim the subject matter disclosed in the patent from which he can exclude others temporarily. Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, we consider the notice function of the claim to be best served by adopting the narrower meaning."

*Athletic Alternatives, Inc.* at 1581.

Where literal infringement is not found, a patentee may seek relief under the Doctrine of Equivalents. *Warner-Jenkinson Co v. Hilton Davis Chemical Co.*, 520 US 17, 21 (1997) (infringement where "there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention").

Seirus brought action against Balboa for both infringement and inducing infringement (knowingly and intentionally encouraging another to infringe). However, inducement requires establishing infringement. *Broadcom Corp v. Qualcomm, Inc*, 543 F.3d 683, 697-698 (Fed. Cir. 2008), as cited by the District Court..

## File Wrapper Estoppel

"An accused device that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product . . . and the claimed elements of the invention." *Werner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 US 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)

However, "[t]he doctrine of equivalents is limited by the doctrine of [prosecution history] estoppel. To the extent that an inventor has limited his invention in a particular way in the proceedings before the patent office, he will not be allowed to later broaden the claims through the doctrine of equivalents if that broadening will have the effect of nullifying the limitations to which the inventor agreed before the examiner." *Intellectual Property: Patents, Trademarks, and Copyright; in a nutshell* 5th Edition, by Arthur R. Miller and Michael H. Davis (2012) § 8.3

Prosecution history estoppel operates by "barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution." *Voda v. Cordis Corp*., 536 F.3d 1311, 1324-25 (Fed.Cir.2008.) "Prosecution history

estoppel requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process. Estoppel is a 'rule of patent construction' that ensures that claims are interpreted by reference to those 'that have been cancelled or rejected.'" *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 733 (2001) Citing to *Schribner-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220-221 (1940).

"If competitors cannot be certain about a patent's extent, they may be deterred from engaging in legitimate manufactures outside its limits, or they may invest by mistake in competing products that the patent secures." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 732 (2001)

### Seirus Fails to Meet Its Burden of Proof

To meet the initial burden of proof to demonstrate an absence of genuine issue of material fact in this regard, Balboa provided the testimony of Jennifer Struebing, a managing member of Balboa, who stated that Balboa never sold or packaged a balaclava with a goggle. Accordingly, Balboa asserted it did not meet the limitation of the sole claim of the '690 Patent and therefore could not and did not infringe the Patent.

The burden of proof switched to Seirus to establish that Balboa sold goggles and balaclavas "in combination." Cognizable evidence was not proffered by Seirus. As discussed by the District Court:

"Seirus attempts to rely on websites to show that Defendants permit customers to purchase balaclavas and goggles together. (Doc. No. 79.) In Cabela's, this Court previously rejected Seirus' argument that the purchase of goggles and an article of clothing at the same time constitutes a combination within claim 1 of the '690 patent. (Cabela's, No. 09-CV-102-H, Doc. No. 440 at 11.) None of the exhibits produced by Seirus show Defendants selling goggles in combination with balaclavas. Instead, the exhibits merely demonstrate that Defendants sell goggles, balaclavas, and other products. There is no showing in the exhibits or otherwise that Defendants sell goggles in combination with an article of clothing".

(*Order*, Dkt 110, A13-20)

The District Court properly granted judgment in favor of Balboa.

## IV. THE DISTRICT COURT DID NOT ERR IN RULING THAT THE SEIRUS HEAD WEAR '804 PATENT WAS INVALID AS OBVIOUS IN LIGHT OF CITED PRIOR ART - SUMMARY JUDGMENT IS PROPERLY AFFIRMED

The District Court engaged in extensive analysis of the prior art which was brought to the Court's attention. The Court carefully reviewed each item of prior art to each of the asserted '804 Patent claims - both in textual and in pictorial comparisons/analysis. (*Order*, Dkt 110, A5:11-A19:9). Over the course of those fourteen pages of analysis, the District Court provided twenty-five (25) separate figures from the cited prior art. The District Court intertwined the patent figure illustrations with both the textual claims, and construction under applicable case law as to those claims. *Ibid*.

Nowhere in the four (4) pages of Section III of the Appellate Opening Brief (dedicated to the '804 Patent), does Seirus contest the prior art cited to, and analyzed by, the District Court. Seirus AOB, at 57-61. Rather, Seirus concentrates on Judicial Notice, Level of Skill and Collateral Estoppel.

### The Court Engaged in its own Robust Analysis

It is unequivocal that the District Court painstakingly went through all the evidence/ facts as properly before it. The Court stated the legal standard by which it would review the question of obviousness. (Order, Dkt 110, A7-8). The Court then commenced its "Obviousness Analysis" with Claims 1-4 and Claims 8-15 of the '804 Patent, carefully reviewing each claim and limitation. Ibid, 8-13. As part of that analysis, it is undisputed that the District Court carefully reviewed numerous patents, including:

- 5,025,507
- 4,718,123
- 2,686,317
- 5,109,548
- 202,262
- 4,768,235
- 4,300,240
- 4,825,474
- 772,148
- 4,941,211
- 776,963

(*Order*, Dkt 110, A8). The Court continued its detailed and lengthy analysis of obviousness as applied to Claims 6 and 7, and then to Claim 16, and to then to Claims

17 and 18. (*Ibid*, A14-19).   As to each claim, the Court determined that the prior art cited to that claim applied to that claim such to render such claim invalid as obvious. (A3651-4530).

### Collateral Estoppel was as an Alternative Basis - Nothing More

Of the fourteen (14) pages that the District Court dedicated to careful and detailed analysis, Seirus pounces on three (3) sentences therein.  This only where the Court makes passing reference to the availability of the doctrine of collateral estoppel – as an alternative ground –  as based upon the *Cabela's* case as to Claims 1-4; 8-15. (*Ibid*, at A14:1-6).   Indeed, the court makes clear that the application of collateral estoppel was only made as an *alternative* basis. "[T]he court alternatively applies the doctrine of collateral estoppel. . ." (A14) Thus, even if it was error for the court to apply such an analysis, which it was not, the error would be harmless. This is because the Court had already spent the previous seven (7) pages determining invalidity for obviousness based upon the numerous patents cited as prior art as construed against each applicable claim.  Moreover, Claims 6, 7, 16, 17 and 18 were not part of the collateral estoppel alternative - they, like their sister claims, were determined on the merits.  (*Id*., at A14:9-19:9).

### Vacatur Has No Effect

Serius' argument regarding vacatur is not seen as well taken.  The law is well settled that the pendency of an appeal has no effect on the finality of a trial court's

holding nor a binding effect of a trial court's holding. *Rice v. Dep't of the Treasury*, 998 F.2d 997, 999 (Fed. Cir. 1993) (citing to *SSIH Equipment S.A. v. United States Intern. Trade Com'n.*, 718 F.2d 365, 370 (Fed.Cir.1983)):

> "We have held that a final judgment retains its collateral estoppel effect, if any, while pending appeal. . .
>
> This rule creates the potential for a collateral estoppel-based judgment based on a prior judgment that is subsequently vacated or reversed on appeal. . .
>
> Accordingly, we have held that the benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 883, (9th Cir. 2007) See *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (stating that a pending appeal does not affect a judgment's finality for preclusion purposes)".

Seirus argues that vacatur of the *Cabela's* judgment at the request of Seirus caused the decision in *Cabela's* to lose preclusive effect because the court considered the Ringsby Factors. *Appellant's Opening Brief* at 49-50 (A3226). However, the footnote to that quote suggests that the party requesting vacatur must also request the court determine whether the judgment should not have preclusive effect. *Bates v. Union Oil Co. of California*, 944 F.2d 647, 650, 652 fn. 1 (9th Cir. 1991).

As a result, it is posited that if the court considers the Ringsby Factors - but fails to make a determination as to preclusive effect - the judgment should retain its preclusive effect. While Seirus did bring up the Rinsgby Factors in its memoranda requesting vacatur (A3226), Seirus did not request that the court to make a

determination as to the preclusive effect of the vacatur. A review shows that the court did not make a determination as to the preclusive effect of vacatur. (Dkt. 529; A3229-3230). Accordingly, vacatur is a non-issue.

## Judicial Notice Was Quite Proper

The facts are the facts, and evidence is evidence. That Cabelas' also proffered the prior art references does not preclude their use in *Balboa*. Judicial Notice is available, upon request, where "an adjudicative fact..is not subject to reasonable dispute because it: [1] is generally known within the trial court's territorial jurisdiction; or [2] can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned". *FED.R.EVID*, Rule 201.

Here the District Court took judicial notice of patents and file histories of the United States Patent & Trademark Office, the government agency responsible for the issuance of patents, trademarks and copyrights, as a matter of original Constitutional law. Clearly, the USPTO falls within the category of one "whose accuracy cannot reasonably be questioned" with regard to patents. Seirus certainly does not make that charge. The Court did not take judicial notice of facts from other litigation - again, it properly raised collateral estoppel as being alternatively applicable based thereon.

## Level of Skill

Seirus cites to *Innovention Toys, LLC v. MGA Entertainment, Inc.*, 637 F.3d 1314, 1323 (Fed. Cir. 2011) to argue that the District Court's determination of the

level of skill is somehow reversible error. (A60). However, *Innovention* is quite distinguishable.

While the Appellate Court in *Innovention* did reverse the lower court's ruling, it did so on the basis that there was substantial evidence indicating that the district court therein based its decision on an inappropriately low level of skill in the art -

> "Specifically, Innovention asserted that the development of a three-dimensional game would not, in fact, be easy for the average layperson, as it took Innovention's game creators, a Ph.D. in mechanical engineering and two mechanical engineering students, a year and a half to develop and finalize Innovention's game . . . and that Innovention's patent reveals that the claimed invention requires an understanding of geometrical optics."

*Innovention*, 637 F.3d at 1324.

The indisputable fact arises that Seirus could have easily provided evidence of the level of skill of its own product designers, but did not. Again, Seirus may not be heard to complain where it failed to act, or failed to comply with that which was expected of it.

In all of these issues, Balboa proffered proof for the Court's consideration and review, inclusive of by the accepted method of judicial notice. Balboa is not required to reinvent the wheel. Balboa was being sued by Seirus. Seirus, as repeatedly shown by the record, did not meet its burdens of proof, nor did Seirus do so when challenged by Balboa.

Seirus cannot seek to place the blame for its failures upon Balboa. The over riding fact is that Seirus had been litigating the same patents and unregistered trade dress for several years. In point of fact, the Seirus trade dress claim went back to the last century, before the USPTO, unsuccessfully.

## V. CONCLUSION

The Trial Court's denial of Rule 56[d] relief is properly affirmed in light of the fact that Seirus had not less than almost three years and up to more than a decade to garner the requisite facts to prove their case. Since Seirus was on the eve of trial in the Cabela's case on the same '804 Patent, the same '690 Patent and the same (original) trade dress, and where discovery had closed in that case, Seirus may not be heard to complain it did not have an opportunity to gain the information necessary to over come Balboa's summary judgment. It was the same information that Seirus should have already presented in response to the Cabela's summary judgment - but wasn't. Seirus' hand was called, and Seirus came up short - of its own lack. Seirus is not entitled to a do over.

The Trial Court's determination of function and lack of secondary meaning, alone, suffice to affirm the judgement of invalidity of the Seirus asserted unregistered trade dress (both as to product and packaging) especially where Seirus failed to meet its burden of proof.

Moreover, Seirus' own executives gave testimony underscoring the utilitarian features/function of the dress, as well as admitting to a complete lack of surveys or other requisite information that would even begin to go to secondary meaning.

The Trial Court's determination that the claim of Seirus '690 Patent requires a combination of head gear, *e.g.*: a balaclava AND a sport goggle to be sold in combination to raise an infringement was also correct. That correctness is underscored by the fact that Seirus concurred with that Claim Construction in three different actions, inclusive of Balboa. The judgment of non-infringement is therefore properly affirmed.

The Trial Court's determination the '804 Patent was obvious in light of the numerous prior art citations is quite properly affirmed - based upon the Trial Court's own analysis.

Accordingly, this Honorable Court is requested to AFFIRM the judgments of the Trial Court below, *in toto*.

*/s/  Steele N. Gillaspey*

_____

Steele N. Gillaspey
GILLASPEY & GILLASPEY
The NBC Tower
225 Broadway, Suite 2220
San Diego, California 92101
619 234 37600
*sng@g-glaw.com*
*Attorneys for Defendants-Appellees*

**CERTIFICATE OF SERVICE**

I, Steele N. Gillaspey, counsel for Defendant-Appellee, and a member of this Honorable Court, certify that on July 14, 2014 a true and correct copy of the BALBOA RESPONSE BRIEF TO SEIRUS APPEAL will be electronically transmitted to the parties and counsel of record listed below via the Court's CM-ECF system:

Matthew D. Murphey, Attorney          Paul E. McGowan, Attorney
matt.murphey@troutmansanders.com      paul.mcgowan@troutmansanders.com


    /s/ Steele N. Gillaspey

STEELE N. GILLASPEY
Gillaspey & Gillaspey
225 Broadway, Suite 2220
San Diego, CA 92101
Tel: (619) 234-3700

Counsel For Defendant- Appellee
Balboa Manufacturing Co., LLC.
Sports Accessories America, Inc.

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). This brief contains 12,564 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typeface requirements Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point font Times New Roman.

GILLASPEY & GILLASPEY, LLP

Dated: July 14, 2014          By: /s/ Steele N. Gillaspey, Esq.
                              Steele N. Gillaspey, Esq.

                              Attorney for Defendant-Appellee,
                              BALBOA MANUFACTURING CO., LLC